IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

RICKY McGEE,

                    Petitioner,

        Vs.                                No. 13-3060-SAC

STATE OF KANSAS,

                    Respondent.


MEMORANDUM AND ORDER

        This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dk. 1). The petitioner, Ricky McGee, is incarcerated in Lansing Correctional Facility serving a life sentence on a premeditated first-degree murder conviction. After filing a motion for competency evaluation, undergoing evaluation at Larned State Hospital, and being found competent to stand trial, McGee waived his right to a jury trial and agreed to a bench trial that consisted of "McGee's taped confession and stipulated facts, including statements from nine witnesses at the scene of the shooting who personally knew McGee and identified him as the shooter." *State v. McGee*, 280 Kan. 890, 891, 126 P.3d 1110 (2006). The district court convicted McGee of premeditated first-degree murder and imposed a sentence of life imprisonment.

In his application for a writ of habeas corpus, McGee raises the following issues:    (1) denial of constitutional right to a speedy trial;  (2) denial of constitutional right to counsel;  (3) ineffective assistance of counsel; and (4) lack of a knowing and voluntary waiver of the right to a jury trial. The state has filed its response (Dk. 13) and forwarded for the court's review the relevant state court records (Dk. 14).

**PROCEDURAL HISTORY**

Following his bench trial and conviction in the District Court of Wyandotte County, the petitioner appealed his conviction directly to the Kansas Supreme Court raising two issues:    (1) the state violated his right to a statutory speedy trial; and (2) the district court erred in not appointing him new counsel. 280 Kan. at 890. On the first issue, the Court charged to the defendant 147 days of the 236-day delay and found the State responsible for 89 days of the delay. The Court concluded the State met its statutory duty of bringing the defendant to trial within 90 days. 280 Kan. at 893-94 (citing K.S.A. 22-3402(1). On the second issue, the Court found that defense counsel had contradicted only McGee's description of counsel's efforts and that this "disagreement does not rise to the level of a conflict of interest." *Id.* at 896-97. Thus, the Supreme Court affirmed the conviction in a published opinion on February 3, 2006. *Id.* at 890.

2

The court borrows the Kansas Court of Appeals' summary of

McGee's initial habeas relief efforts:

On December 15, 2006, McGee filed a motion pursuant to K.S.A. 60–1507. He argued that the complaint was fatally defective, he did not voluntarily and intelligently waive his right to a jury trial, and there was no evidence of intent or premeditation. There is no evidence McGee's motion was served on anyone. On September 18, 2008, Robbin Wasson, assistant district attorney, filed a document entitled "State's Response to Defendant's Motion Pursuant to K.S.A. 60–1507," rejecting each of McGee's arguments. However, it appears the document was filed in McGee's criminal case, No.2002CR1827, not his civil habeas action, No.2006CV2200.

On March 16, 2009, McGee filed a motion for leave to amend his 60–1507 motion since the district court had not yet disposed of his December 15, 2006, motion. McGee requested the addition of arguments that his trial counsel was ineffective for failing to raise the defense that McGee suffered from "PCP induced psychotic disorder" during the commission of the crime and also at the time he waived his Miranda rights. He also claimed trial counsel failed to present any expert testimony to rebut the State's contention that he was competent to stand trial and suffered from no mental disease during commission of the crimes. Additionally, McGee claimed his trial counsel failed to conduct adequate pretrial investigations and denied him the opportunity to present a diminished capacity defense, and the trial court erroneously denied the appointment of new trial counsel.

On June 12, 2009, Sheryl Lidtke, deputy district attorney, filed a response in McGee's habeas case to address McGee's motion filed on December 15, 2006—there was no mention of the motion for leave to amend. The State explained it had not been served with a copy of the 2006 motion but, in any event, McGee's allegations were trial errors that should have been raised in his direct appeal, were conclusory, and there was no evidence cited in support of any of the allegations. On June 19, 2009, the district court summarily denied McGee's motion as follows:

"The petitioner's 60–1507 action is summarily dismissed in all respects. After a review of the motions and the files and records of the case, this court rules conclusively that the movant is entitled to no relief. Further, these proceedings should not be used as a substitute for a second appeal."

McGee's notice of appeal was severely out of time, but this court retained the appeal.

*McGee v. State*, 270 P.3d 1230, 2012 WL 718940, at *2 (Kan. App. Mar. 2, 2012). On his § 1507 appeal, McGee argued the district court failed to make sufficient findings and conclusions on his § 1507 motion and failed to address all of his claimed issues. The appeals panel addressed these other claimed issues, including the lack of knowing and voluntary waiver of his right to a jury trial and ineffective assistance of counsel for not pursuing a jury trial, for not arguing he was in a PCP-induced mental state which precluded formation of the requisite intent, and for failing to conduct an adequate investigation. The Kansas Court of Appeals affirmed the district court's denial of § 1507 relief on March 2, 2012. *Id*. The Kansas Supreme Court denied McGee's petition for review on February 7, 2013. McGee's pending petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 was filed April 3, 2013.

**FACTS**

The court is to presume the state court's factual determinations are correct, unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner has not carried that burden and has not proffered any evidence in support of that burden. Thus, the court adopts the following facts as taken from the Kansas Supreme Court's opinion affirming his conviction:

> Due to the nature of this appeal, only the following summarized facts are pertinent. Ricky McGee shot Thomas Dorsey to death on November 8, 2002. The district court issued a warrant for McGee's arrest the next day. Officers arrested McGee on November 10, 2002. McGee

4

confessed to shooting Dorsey shortly after his arrest. Following a preliminary hearing on January 16, 2003, the district court bound McGee over for trial and arraigned him.

On March 3, 2003, McGee filed a motion for a competency evaluation, a notice of his intent to use mental disease or defect as a defense, and a request for a mental evaluation. After a hearing on March 7, 2003, the district court granted McGee's motion and ordered that McGee to be evaluated at Larned State Security Hospital (Larned).

On March 7, 2003, McGee filed a pro se motion seeking the appointment of new trial counsel, claiming that his counsel did not visit him and had not prepared a defense. The district court heard McGee's motion on the same day, after the hearing on McGee's motion for a mental evaluation, and denied the motion.

McGee was admitted to Larned on March 31, 2003, for his mental evaluation and returned to the Wyandotte County jail on July 2, 2003. A psychiatrist at Larned concluded that McGee was competent to stand trial and did not lack the mental state required to commit murder. The psychiatrist's report was received by the State on June 20, 2003. The report was filed with the district court on July 24, 2003. The district court found McGee competent to stand trial on August 8, 2003.

On August 25, 2003, McGee's trial counsel filed a motion to dismiss based on a violation of McGee's statutory right to a speedy trial. Following a hearing, the district court denied the motion on August 29, 2003.

McGee waived his right to a jury trial and agreed to a bench trial based on McGee's taped confession and stipulated facts, including statements from nine witnesses at the scene of the shooting who personally knew McGee and identified him as the shooter. McGee's trial began on September 9, 2003. The district court convicted McGee of first-degree premeditated murder and sentenced him to life in prison.

*State v. McGee*, 280 Kan. at 890-91.

## AEDPA STANDARD OF REVIEW

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855,

1862 (2010) (citation and internal quotation marks omitted). Indeed, it "erects a formidable barrier to federal habeas relief." *Burt v. Titlow*, ---U.S.---, 134 S. Ct. 10, 16 (2013). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Tenth Circuit has summarized the relevant law interpreting and applying this statute:

> "Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Lockett [v. Trammel]*, 711 F.3d [1218] at 1231 [(10th Cir. 2013)] (quotations omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quotations omitted).
> A state court decision is an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'Connor, J.); accord *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule"—like the one adopted in Strickland—"the more leeway

6

[state] courts have in reaching outcomes in case-by-case determinations." *[Harrington v.] Richter*, 131 S.Ct. [770] at 786 [(2011)] (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). An "unreasonable application of federal law" is therefore "different from an incorrect application of federal law." *Id.* at 785 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495 (opinion of O'Connor, J.)).

We may "issue the writ" only when the petitioner shows "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 786 (emphasis added). "Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Titlow*, 134 S.Ct. at 16 (quoting *Richter*, 131 S.Ct. at 786). Indeed, AEDPA stops just "short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 131 S.Ct. at 786. Accordingly, "[w]e will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Titlow*, 134 S.Ct. at 16 (quoting *Richter*, 131 S.Ct. at 786).

*Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014).

When factual issues are raised in the § 2254 proceeding, the habeas court shall not grant relief unless the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Pursuant to § 2254(e)(1), the habeas court must presume the state court's factual determinations are correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**DENIAL OF CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL**

McGee's first ground of relief in his § 2254 petition is that he was "denied constitutional right to speedy trial," and his supporting facts are, "[t]he state to (sic) 53 days over the allowed 90 days to take me to trial. A total of 143 days." (Dk. 1, p. 5). McGee states that he raised this issue in his direct appeal to the Kansas Supreme Court and in post-conviction motion in state court. *Id*. The Supreme Court understood McGee's argument to be "that his conviction must be reversed and this action dismissed because the State failed to bring him to trial within 90 days as required by K.S.A. 22-3402." 280 Kan. at 891. Thus, McGee raised on direct appeal the denial of only a *statutory* right to a speedy trial. The Kansas Court of Appeals decision shows McGee did not argue in his 1507 proceedings the denial of a speedy trial right, statutory or constitutional.

Respondent answers that the petitioner has defaulted this claim. It is well-settled that a state prisoner must satisfy the exhaustion prerequisite in 28 U.S.C. § 2254(b)(1) before filing a federal habeas corpus application, which means that each of his federal claims must have been presented to the highest state court by way of either direct appeal or state post-conviction proceedings. When a habeas applicant failed to properly exhaust a claim in state court and those remedies are no longer available at the time the federal habeas application is filed, the applicant meets the technical requirements for

8

exhaustion. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); see

*Anderson v. Sirmons*, 476 F.3d 1131, 1139–40 n. 7 (10th Cir. 2007). As the

respondent notes, the petitioner not only lacks grounds for a successive 1507

under state law, but the state statute of limitations has long expired. This claim

is, however, now subject to dismissal under the doctrine of procedural default.

Under this doctrine, review by a federal habeas court of claims that were

procedurally defaulted in state court is barred, unless the applicant can

demonstrate either cause and prejudice for the default or that a fundamental

miscarriage of justice would result if his claim is not considered. *Coleman*, 501

U.S. at 724, 750; *Fairchild v. Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009)

(internal quotation marks omitted).

   The cause standard requires a petitioner to "show that some

objective factor external to the defense impeded … efforts to comply with the

State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Examples of such external factors include the discovery of new evidence, a

change in the law, and interference by state officials. *Id*. As for prejudice, a

petitioner must show "'actual prejudice' resulting from the errors of which he

complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A "fundamental

miscarriage of justice" requires a petitioner to demonstrate that he is "actually

innocent" of the crime of which he was convicted. *McCleskey v. Zant*, 499 U.S.

467, 494 (1991). McGee has not demonstrated cause for failure to present this

constitutional claim to state court. His petition contains a passing reference to ineffective counsel in the 1507 proceeding, but this is not enough. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Even if it were, McGee has not asserted anything approaching actual prejudice. Nor has he made a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). Finally, the merits of McGee's speedy trial arguments rests exclusively on the Kansas speedy trial period of 90 days and makes no showing of any arguable constitutional violation.

**DENIAL OF APPOINTMENT OF NEW COUNSEL**

McGee here argues he was denied his constitutional right to counsel when a conflict of interest and a communication breakdown existed between him and his appointed counsel and the district court failed to make a proper inquiry. "[W]here the defendant makes a timely objection pointing out a conflict of interest, prejudice is presumed if the trial court fails to make an adequate inquiry into the situation and take appropriate steps." *United States v. McCullah*, 76 F.3d 1087, 1099 (10th Cir. 1996) (citing *Selsor v. Kaiser*, 22 F.3d 1029, 1032–33 (10th Cir. 1994) (citing in turn *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978))), *cert. denied*, 520 U.S. 1213 (1997). On direct appeal, McGee raised the district court's consideration and ruling on his *pro se* motion appointment of new trial counsel. 280 Kan. at 894. He argued that the trial court should have found a conflict and presumed prejudice based on his

10

counsel rebutting McGee's allegations that counsel was providing inadequate representation. He also argued that the trial court failed to make a proper inquiry into the nature of the problems between McGee and his counsel. The Kansas Court rejected McGee's characterization of a conflict existing with his counsel and concluded the trial court's inquiry was appropriate under the circumstances. 280 Kan. at 895-897.

The Kansas Supreme Court quoted McGee's allegations against his counsel that were part of his *pro se* motion:

> "There is a great lack of concern for this case by my lawyer. I have been here 4 months and have talked to him only one time. And that one time was at preliminary hearing. I have 90 days until trial (post-preliminary hearing) and he still hasn't made any attempt to come and discuss my case. Half of the 90 days has went by and there has been no communication. I have a murder charge in the First degree and I can't see us preparing for trial in this amount of time. And this is my life we are talking about. I am totally dissatisfied with his contributions to this case. Also I'm dissatisfied with the communications problem we are having, and the lack of will to do his job in this case. He has lied about coming to see me more than once. And has been a no-show at all in the time that I've been in here. We have never discussed my side of the case, and at preliminary hearing he didn't even have copies of the transcripts or witness statements. He is a very ineffective lawyer. I have sent letters to him to come and see me and have had no response. With him as my lawyer I would be facing him as well as the D.A. in court and I would not endure a fair trial. Needless to say who can prepare for a murder trial in (1) one visit."

280 Kan. at 894-95. The Court quoted counsel's comments made at the hearing on this motion:

> "And Judge, if I could add a little to this. As far as the factual allegations, going there, I see that it says that I haven't visited Mr. McGee and that's not true. I in fact was going through my file. I visited him shortly after I

11

was appointed to him. We talked about what he wanted to do with his case. He told me that he was planning on going to trial, and he wanted a preliminary.

"So I set a preliminary and reviewed his file. Let him know that's what I was doing. I visited him shortly before the preliminary to let him know what was going to happen at the preliminary. Then we had a lengthy preliminary, after which I spoke to him about my ideas about filing this motion for competency. I spoke to his family about that and let them know what I was planning on doing. And I did so.

"But, Judge, here is the position I'm in. Mr. McGee has been incarcerated with a couple of clients, or one client of mine that's dissatisfied and is taking action against me right now. I think that's part of it.

"But I feel, Judge, I know I have represented him well. I feel I have."

280 Kan. at 895. Trial counsel did contradict McGee's allegations on the number and nature of visits, and trial counsel 's statement also undermined McGee's assumptions that counsel had done little to prepare the defense. The Court found, "the disputed facts in this case indicate a disagreement between McGee and his trial counsel, but that disagreement does not rise to the level of a conflict of interest." *Id.* at 896. The Court also rejected the defendant's argument that the trial court failed to inquire after becoming "aware of a potential conflict of interest between the defendant and his counsel." *Id.* at 897. The Court concluded:

> McGee correctly notes that the district court is required to inquire when it becomes aware of a potential conflict of interest between the defendant and his counsel. *See State v. Taylor*, 266 Kan. 967, 979, 975 P.2d 1196 (1999). However, there is no conflict of interest indicated by the allegations in McGee's pro se motion. McGee's motion indicates that he is dissatisfied with the time and attention he received from his trial counsel. While McGee and his attorney may disagree about the amount of time and attention McGee should receive to adequately prepare McGee's defense, that disagreement does not rise to the level of a conflict of interest.

In addition, McGee thoroughly described his complaints in his pro se motion. McGee's hand-written motion included details regarding McGee's complaints and provided an adequate opportunity for McGee to state the source of his dissatisfaction. McGee has failed to demonstrate any abuse of discretion in denying his motion without giving him the opportunity to verbally air his complaints at the hearing.

*Id.*

Tenth Circuit law on conflicts between counsel and criminal

defendants is aptly summarized here:

To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (internal quotation marks omitted). Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney, ... rather, there must be a total breakdown in communications. *United States v. Doe # 1*, 272 F.3d 116, 124 (2d Cir. 2001).

If a defendant makes sufficiently specific, factually based allegations in support of his request for new counsel, the district court must conduct a hearing into his complaint ...

Hearings typically are crucial for what they add to a district court's knowledge in this context. They help a court determine whether an attorney-client conflict rises to the level of a "total breakdown in communication" or instead whether the conflict is insubstantial or a mere "disagreement about trial strategy [that] does not require substitution of counsel." *United States v. Taylor*, 128 F.3d 1105, 1110 (7th Cir. 1997). The types of communication breakdowns that constitute "total breakdowns" defy easy definition, and to our knowledge no court or commentator has put forth a precise definition. As a general matter, however, we believe that to prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.

....

[In *Romero v. Furlong*, 215 F.3d 1107 (10th Cir.2000], we considered four factors when examining the constitutional implications of a total breakdown in communication: 1) whether the defendant's motion for

13

new counsel was timely; 2) whether the trial court adequately inquired into defendant's reasons for making the motion; 3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and 4) whether the defendant substantially and unreasonably contributed to the communication breakdown.

*Parker v. Simmons*, 2005 WL 946515 at *5 (D. Kan. Feb. 25, 2005) (quoting *United States v. Lott*, 310 F.3d 1231, 1249–50 (10th Cir. 2002), *cert. denied*, 538 U.S. 936 (2003) (some interior citations omitted)), *appeal dismissed,* 164 Fed. Appx. 704 (10th Cir. Jan. 20, 2006).

The court agrees with the respondent that McGee has failed "to identify any clearly established federal law providing that an unconstitutional conflict of interest exists under the circumstances he alleges." *Velasquez v. Faulk*, 2014 WL 464000, at *6 (D. Colo. Feb. 5, 2014), *appeal dismissed*, 594 Fed. Appx. 553 (10th Cir. Feb. 25, 2015). While its inquiry could end there, the court also observes that McGee's arguments do not present a constitutional question over the denial of counsel. The Kansas Supreme Court's analysis of the conflict question comports with federal case law. The trial court conducted a hearing on the defendant's *pro se* motion and inquired of the defense counsel. There is nothing of record to rebut the Kansas Supreme Court's conclusion that McGee was "provided an adequate opportunity . . . to state the source of his dissatisfaction." 280 Kan. at 897. Nor did the Kansas high court unreasonably apply the governing law to the facts here. There is nothing of record to show the conflict between McGee and his trial counsel to be so great

14

as to cause a total lack of communication and preclude an adequate defense.
The record plainly does not support a finding that there was a complete
breakdown of communication or an irreconcilable conflict. The petitioner is not
entitled to relief on this claim.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

McGee argues his trial counsel failed "to raise a vital defense, . . .
[to] do an adequate pre-trial investigation, . . . to present mitigating evidence
that . . . [he] did in fact suffer from a mental disease or defect, . . . and to
present a defense at all." (Dk. 1, p. 8). He also alleges his counsel helped the
"prosecutor pressure . . . [him] into a bench trial with threats of a sentence
that could not be imposed" and "called" McGee "a liar in open court." *Id.* McGee
has not provided any additional arguments or cited any authorities for these
conclusory allegations. Conclusory allegations without supporting factual
averments are insufficient to support a claim of ineffective assistance of
counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (no
requirement for court to fashion arguments where allegations are conclusory
and there are no supporting factual averments); *see Cummings v. Sirmons*,
506 F.3d 1211, 1228-29 (10th Cir. 2007), *cert. denied*, 554 U.S. 907 (2008).
McGee's allegations may be dismissed summarily.

McGee has the burden of showing the state court decision "was
contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court . . .; or . . . was based on an unreasonable determination of the facts in light of the presented in the State court proceeding." *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015). This burden is "intentionally designed to be 'difficult to meet.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011)). The "AEDPA 'reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

The Kansas Court of Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984), in addressing McGee's arguments for ineffective assistance of counsel. McGee offers no showing of how the Kansas Court of Appeals' decision on his ineffectiveness assistance claim was contrary to or involved an unreasonable application of Supreme Court precedent. Nor has he proffered how the appellate court's decision was based on an unreasonable determination of facts. To prevail on a claim of ineffective assistance of trial counsel, the petitioner "must show both:   (1) constitutionally deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." *Cargle v. Mullin*, 317 F.3d 1196,

16

1202 (10th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).   On the first prong, the courts recognize "a strong presumption that counsel's performance falls within the wide range of professional assistance" and require a defendant to prove "that counsel's representation was unreasonable under prevailing professional norms and that the challenged actions was not sound strategy." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (internal quotation marks and citations omitted), *cert. denied*, 556 U.S. 1136 (2009). The Tenth Circuit has summarized the relevant law governing the first-prong analysis:

> "[O]ur review of counsel's performance under the first prong of Strickland is a 'highly deferential' one." *Id.* [*Byrd v. Workman*, 645 F.3d 1159] at 1168 [(10th Cir. 2011)] (quoting *Hooks* [*v. Workman*,] 606 F.3d [715] at 723 [(10th Cir. 2010)]). "Every effort must be made to evaluate the conduct from counsel's perspective at the time. . . ." *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994)) (internal quotation marks omitted). Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Byrd*, 645 F.3d at 1168 (alteration omitted) (quoting *Dever*, 36 F.3d at 1537) (internal quotation marks omitted). Surmounting this "high bar" is not an "easy task." *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (quoting *Padilla v. Kentucky*, ––– U.S. –––––, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010)) (internal quotation marks omitted); *see Fox*, 200 F.3d at 1295 ("[Petitioner] bears a heavy burden in that he must overcome the presumption that his counsel's actions were sound trial strategy . . . .").
>
> A state prisoner in the § 2254 context faces an even greater challenge. *Byrd*, 645 F.3d at 1168. "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, '[w]e defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client.'" *Id.* (second alteration in original) (quoting *Crawley*

> *v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009)). As the Supreme Court
> has explained, "because the *Strickland* standard is a general standard, a
> state court has even more latitude to reasonably determine that a
> defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556
> U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009). Thus, our
> review of ineffective-assistance claims in habeas applications under §
> 2254 is "doubly deferential." *Id*. "[T]he question is not whether counsel's
> actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied Strickland's deferential
> standard." *Richter*, 131 S.Ct. at 788.

*Hooks v. Workman*, 689 F.3d 1148, 1186-87 (10th Cir. 2012). Our "doubly

deferential" review of this ineffectiveness assistance claim reveals sufficient

reasonable arguments of counsel's performance under *Strickland*. The court

rightly defers to the Kansas Court of Appeals' determination that McGee's trial

counsel actions were not unreasonable. 2012 WL 718940, at *6-*8. With

nothing but conclusory allegations before it, the court summarily dismisses the

petitioner's claim and will not lengthen this order with further discussion of the

Court of Appeals' decision.

## LACK OF A KNOWING AND VOLUNTARY WAIVER OF THE RIGHT TO A JURY TRIAL

The petitioner includes the following in support of this claim:

> Court never inquired as to whether or not I was threatened by counsel.
> Counsel and prosecutor used a harsher sentence as leverage to get me
> to agree to a trial to the bench. Counsel also lied to me about a
> self-defense claim, said that I couldn't use it in Kansas and that
> defendant had no weapons, which wasn't true, court didn't make
> adequate inquiry into circumstances surrounding waiver.

(Dk. 1, p. 9). In discussing this issue, the Kansas Court of Appeals followed

*State v. Irving*, 216 Kan. 588, 53 P.2d 1225 (1975), which recognized that a

defendant's right to a jury trial to be "a fundamental right that should be strictly construed in favor of the defendant" but that this right can be effectively waived when understood "and voluntarily given." 2012 WL 718940 at *5. The court also noted from its own precedent that a "defendant must personally waive this right," and the "trial court must personally address the defendant, not defense counsel, to obtain a waiver." *Id*. The court reiterated that an effective waiver depends on the trial court informing the defendant of this right and can be determined only after consideration of all the facts and circumstances. *Id*. The appellate court panel concluded with this analysis:

> The trial court conducted an extensive inquiry with McGee concerning the accuracy of his trial attorney's statements, verifying that he understood he had a constitutional right to jury trial, that he had discussed the right to a jury trial with his attorney, that he had no questions for the court or his attorney, and that he agreed to waive a jury trial and proceed on stipulated facts. McGee signed the stipulation of facts, agreeing that the State would present such evidence. McGee clearly understood what was happening with the waiver of jury trial and stipulation. He was directly examined as to the voluntariness of his waiver by the trial court. McGee knew the extensive evidence of the witnesses who saw him leave with the victim, witnesses who saw him fire his gun at the victim six times, McGee's confession to the crimes, the mental evaluations that he was competent to stand trial, the potential of a hard 50 sentence, and his trial counsel's theory that his best chance for any relief was to pursue the speedy trial issues as soon as possible. McGee knowingly and voluntarily waived his right to a jury trial and knew the consequences of his stipulation to the State's evidence.

*Id*.

The trial record shows the defense counsel stated to the court the following:

Judge, after discussions with my client and the prosecutor, we believe that our—our best shot in this case is our appellate stance on the speedy trial issue. Given that, I've proposed to my client for his consideration agreeing to a stipulation to the facts, in other words, the State reciting what their evidence would be and us agreeing, that the Court decide the case based on that. And I told him that it operated much like a plea of guilty in that if the Court finds a factual basis sufficient, he will find you guilty of the charge. However, it does not operate to waive your appellate rights regarding the conviction.

The State has agreed in exchange for that, that they would not seek a hard 50 sentencing in this case were the Court to convict my client of first degree murder. I've discussed it with him that our chances of trial, any lesser includeds that he might be convicted of and I think he's come to the same conclusion I have [that] it would be in his best interest to proceed through that stipulation as I have suggested.

(State rec. Vol. IX, pp. 5-6); 2012 WL 718940 at *5-*6. The court has

reviewed the trial record and sees nothing to contradict the court of appeals'

conclusion that "McGee knowingly and voluntarily waived his right to a jury

trial and knew the consequences of his stipulation to the State's evidence."

2012 WL 718940 at *5.

The waiver procedure used by the trial court and the review

standard used by the Kansas Court of Appeals parallels the clearly established

Federal law. *See United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir.)

("waiver is knowing, intelligent, and voluntary") (citing in part, *Adams v.*

*United States ex rel. McCann*, 317 U.S. 269, 275 (1942)), *cert. denied*, 516

U.S. 844 (1995). There is nothing in the record to show the appellate decision

was contrary to federal law, involved an unreasonable application of it, or was

based on an unreasonable determination of the facts. McGee has failed to meet

20

his burden of establishing the Kansas Court of Appeals' finding that his waiver of a jury trial was made knowingly and voluntarily is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**EVIDENTIARY HEARING**

Because all claims and arguments here have been resolved on the record, there is no need for an evidentiary hearing. *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The court denies any request for an evidentiary hearing.

**CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a COA when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484

(2000); *see United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). When a claim is denied on procedural grounds, "the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, --- U.S. ---, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484). Petitioner has not met these standards as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 31st day of August, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge